The opinion of the court was delivered by
Watkins, J.
Plaintiff claims of defendant $5000 as damages— $2500 for an alleged libel and slander, and $2500 for an alleged malicious prosecution and false imprisonment. These charges are grounded in certain judicial proceedings: The libel and slander in the answer of defendant in a certain civil suit, entitled N. Weil vs. M. Israel, the parties thereto being identical with those before this court, in which a claim was made for the quantum meruit value of plaintiff’s services rendered to the defendant as a clerk; the malicious prosecution and false imprisonment in an affidavit made by the defendant charging the plaintiff with perjury, and in causing his arrest thereunder and confinement in the parish jail.
The trial was had before a jury, who rendered a verdict in favor of the plaintiff for the nominal sum of $50, without stating on which of the grounds it was predicated.
From this judgment the plaintiff alone has appealed, and the defendant has not filed an answer to the plaintiff’s appeal, nor demanded any amendment to the judgment appealed from. The only *958 question for us to consider and determine is whether the judgment-shall be increased or affirmed.
I.
The plaintiff’s petition makes the following specification of de-. fendant’s libel and slander substantially, viz:
That in the defendant’s answer in the suit of Weil vs. Israel, amongst other things, he averred that plaintiff “ was so notoriously-unreliable that he never would have entertained an idea of trusting-him with any trust or employment whatever.” That judgment in that suit having been rendered in plaintiff’s favor, and against the defendant, the latter made an application for a new trial; and, amongst other things in his motion, he averred under oath that the former “ is notoriously unworthy of trust as a clerk, and could not obtain employment as such wherever he was known.”
That said answer and written motion were filed in court and publicly read by defendant’s attorney in open court in the presence of many persons; and that said motion for new trial was, on due consideration, overruled by the presiding judge. That the said allegations in the answer and motion for new trial are and were false,, slanderous and libelous, and were made by the defendant wilfully, maliciously and without probable cause; and that by said slanderous, and libelous allegations made by said Israel he has been damaged in the amount stated “ by the insult and affront to Ms good name and reputation in the community in which he lives, and by the vexation,, humiliation, annoyance and outrage to his feelings.”
The defence is a justification and confession under mitigating circumstances. The latter are that “he consulted an able and experienced attorney in regard to the defence of his suit, to whom he-fairly and fully stated all the facts material and pertinent to his defence as he understood them; and he avers that the allegations in his answer are true, and were made in good faith and without malice.”
He likewise affirms the truth of the averments of his motion for-new trial. He further affirms that plaintiff has not been damaged, either in business or reputation by reason of the just, reasonable and bona fide, defences made by him in that suit, or in his motion for new-trial, which was made in pursuance of his legal rights. *959 On the trial of the suit for wages plaintiff adduced proof of his demand to the effect that he was in the employment of the defendant, and entitled to compensation for his services. Defendant proposed to rebut that proof by showing the falsity of plaintiff’s statements as a witness; but, on plaintiff’s objection, the court held that the offered testimony was inadmissible, because the proper-basis for the introduction of such proof had not been laid. But the rejected evidence only went to the fact of plaintiff’s employment at all, or that he was not entitled to and was not to receive any salary for his services, as defendant was a brother-in-law, and had done him a conspicuous service. We do not understand that the rejected testimony touched the question of the plaintiff’s unreliability as a clerk, or for the performance of any trust or employment whatever, as alleged in defendant’s answer; nor did it even tend to prove the charge that plaintiff was “ notoriously unworthy of trust as a clerk, and could not obtain employment as such wherever he was known,”' as laid in the motion for a new trial. It does not appear in this case what testimony, if any, was adduced in that suit in support of the defendant’s quoted averments. The testimony in this case shows that instead of the plaintiff being so notoriously unreliable and untrustworthy as a clerk that he could not obtain employment as such wherever he was known, and so that the defendant “never would have entertained the idea of trusting him with any employment whatever,” the contrary is true. Several of the witnesses — those of the defendant as well as those of the plaintiff — testify that the plaintiff is at this time in the employ of a responsible merchant of Shreveport, and had for many years before been repeatedly and constantly thus employed. Many witnesses testify to his honesty and reliability as a clerk, and that his reputation in that regard is and has always been excellent in that city.
Among the persons and firms for whom he has worked are enumerated many of the most reputable merchants.
One of the defendant’s principal witnesses states:
“There are some things that I would trust Mr. Weil to do, and everybody else would. As far as honesty is concerned, I am satisfied he would not wrong his employer,” etc.
Another one of his witnesses says:
“ I know if I needed a clerk I would just as soon hire Mr. Weil as anybody else.”
*960 The defendant as a witness does not make any reference to the subject at all, and was not asked by his counsel a single question about it. Not only so, but the defendant’s counsel objected to any evidence on this subject being introduced in rebuttal in this case, because no such evidence was introduced on part of defendant.
In the course of the trial the following occurred, viz:
Q,. “Did you ever tell Mr. Israel that Mr. Nathan Weil was so notoriously unworthy of trust as a clerk that he could not obtain employment as such wherever he was known?”
“ Counsel for defendant objected to the question on the grounds that no such evidence was brought in on the part of defendant.” And this objection was sustained by the trial judge, and the evidence rejected.
Notwithstanding the manifest disposition of the defendant to repress this sort of evidence, there is a great deal of it in the record; and as a sample of the numerous statements on the subject, we will quote a part of the evidence of a gentleman who is familiarly known in business circles in Shreveport, to-wit:
Q,. “How long have you known Nathaniel Weil, the plaintiff in this suit?
A. “I think since 1855. I believe I can remember him that far back.
Q. “ What is his standing in the community as a trustworthy and reliable clerk?
A. “ I never heard anything against his character until recently, when the trouble arose between Mr. Israel and himself.
Q. “ Do you consider him a trustworthy and honest clerk?
A. “I always considered him as such. Had no occasion to consider him otherwise.
Q,. “ You know that during these times he has been employed by reputable merchants of this place?
A. “ I know he has, and never heard any of these merchants complain of his character.”
From the testimony related, and other evidence in the record, we are satisfied that the truth of the charges made in the answer of the defendant and his motion for new trial is not made out. On the contrary, their falsity is fully established. There was no evidence offered in their affirmance on the trial of the suit in which they were *961 filed. None on the trial of this canse. The defendant did not offer any testimony- — -not even his own — in support of them, but objected to the introduction, by plaintiff, of evidence to prove their falsity.
With regard to the mitigating, circumstances' under which these pleas were filed, to-wit: the advice of counsel “to whom he fairly and fully stated all the facts material and pertinent to his defence as he understood them,” the record fails to disclose anything whatever. He placed his counsel on the stand, and interrogated him on other branches of this case, but not in regard to these pleas. And this he failed to do, notwithstanding the plaintiff’s counsel attracted his attention to the answer and motion, and asked him if he prepared them, and if he read them in open court; to which questions he replied in the affirmative.
The complaint of the plaintiff is not alone of the libelous allegations that are contained in an answer prepared by defendant’s counsel, but a more serious complaint is made of an averment that is contained in a written motion for a new trial, which was prepared by his counsel, but signed and sworn to by the defendant, from which we make this extract, to-wit: “That since this cause was tried, he has been informed that he can prove by A. Rebstock, Sam. Benjamin, E. M. Hicks, E. Jacobs and many others, that plaintiff is notoriously unworthy of trust as a clerk, and could not obtain employment as such"wherever he was known.” On the trial of this case only two of the witnesses named were put upon the stand, and they did not swear, as defendant swore they could. So, it is immaterial whether-the ease be considered with reference to the answer, as the act of counsel, or the sworn motion, as the act of the defendant; both are untrue, undefended and indefensible.
The law of libel and slander, as applicable to publications such as the one u'nder consideration, is carefully stated in Staub vs. Van Benthuysen, 80 An. 467, from which we make the following pertinent extracts, viz:
“A libel is any publication, whether in writing, printing, picture, effigy or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule or obloquy, or which causes him to be shunned, or which has a tendency to injure him in his occupation1'’ (our italics).
Ogden on Libel and Slander, p. 7, 20. Again: “The word‘malice,’ when used in a civil or criminal pleading in cases .of this kind, does *962 not imply, much less mean, ill will or personal malice. Its legal sense is a wrongful act, done without just cause or excuse. Malice is an imputation of the law, from the false and injurious nature of the 'charge, and differs from actual malice or ill will, which latter may be proved to enhance the damages. Legal malice need not be proved. The law imputes it to the publisher of a libel from the act of publication.
“Any publication which is false and defamatory subjects the publisher to damages in favor of the party aggrieved, printed or written slander being justly considered more pernicious than verbal. The law holds the publisher responsible, as the instrument used for the dissemination of calumny, whereby the character of any one may be blasted, or his business injured, or his social standingimpaired. And it is not incumbent on the party assailed by falsehood and defamation, to show malice against himself on the part of the publisher, nor to prove that he has been injured by the publication.”
Perret vs. N. O. Times, 25 An. 170.
Again: “It follows as an inevitable consequence that the defendant is entitled to redress. If the plaintiff has published a libel of him, or to use the ordinary non-legal language, has sold, distributed and circulated a newspaper which contained a representation of the defendant in picture and printing, which exposed him to obloquy, or which has a tendency to injure him, in business, or impair his social position, or degrade him in the esteem of his friends and of the public, and being put to the proof not a scintilla of it is even tendered, to establish that it was the truth, but on the contrary, his own witnesses affirm the contrary — then has the plaintiff inflicted on the defendant an injury recognized as a legal case for satisfaction in damages.
“ It is a conclusive presumption of law that damages have ensued from a libelous publication, and therefore actual damages need not be proved.” (Italics ours.) Tusca vs. Maddox, 11 An. 207; Lobe vs. Cary, 33 An. 915; 14 An. 198; 16 An. 389; 3 An. 69; 6 An. 779; 14 La. 198; 12 An. 894; 23 An. 280.
In Williams vs. McMann, 38 An. 162, this court said: “ The use of opprobious epithets implies malice, when they are slanderous per se. It suffices to maintain an action to recover damages without proving special injury. Every person has the right to enjoy that degree of respect, good will, and social or business distinction, to which his own acts, and his social and business habits entitle him; and any *963 one who unlawfully interferes with this right, by circulating slanderous reports, renders himself liable for consequent damages. Eolkard’s Stacker on Libel and Slander. s{s :|s :{s
“It is true that injuries to one’s feelings and social standing are not susceptible of precise adjustment, but such injuries are recognized as a legitimate ground of action for reasonable indemnity.” 17 An. 64; 19 An. 322; 23 An. 280.
The proof shows that the plaintiff is of middle age, wholly impecunious, and dependent on the meagre salary he obtains as a clerk for the means of subsistence. A statement to the effect that he is so notoriously unreliable and unworthy of trust as a clerk that he could not obtain employment as such wherever he was known, committed to writing, filed in court, and publicly read in the presence of a number of witnesses, if not disproved, would certainly tend to injure him in his occupation, to blast his character, and impair his social standing. Being proved to be untrue, such statement is libelous and slanderous, and we know of no more effectual way in which it could have been published to the world than by filing it among the records of the court, where it must remain beyond recall through all coming time. We think that in' this respect plaintiff’s case is made out, and that he is entitled to an increased allowance of damages. It was not necessary for the plaintiff to offer any proof of damage suffered, only to enhance the allowance due. As no such proof was introduced, it becomes our duty to assess such reasonable amount as will satisfy the law under the circumstances.
II.
With regard to the charge of malicious prosecution and false, imprisonment the facts appear to be as follows, viz:
Subsequent to the trial of the suit of W^eil vs. Israel for compensation for services, and prior to the rendition of judgment thereon, the defendant made an affidavit, before a justice of the peace, in due form of law, charging the plaintiff with having committed the crime of perjury in that suit, by'swearing falsely as to some material fact in that cause. Thereunder he caused the plaintiff to be arrested and incarcerated in jail for several hours, and until he could find a surety to go on his release bond. When the grand jury convened, they examined into this matter; summoned some witnesses *964 and then ignored the complaint. On the trial of this case the defendant and his witnesses testify that it was his desire that the prosecution should be discontinued, and that neither the defendant nor his witnesses appeared before that body. There are several witnesses who testify as to .the untruthfulness of the plaintiff’s statements, as a witness in the former case; but the substance of this evidence is that the plaintiff had stated that he was not working with defendant for a salary, and was not employed ■ by him. That evidence has no application to the issues of that case; it was not a suit on a contract, but one for the quantum meruit value of the plaintiff’s services as a clerk. He never claimed a salary, nor that he had ever made any formal contract with the defendant. In the face of the record and the proof adduced, not only was the pláintiff not guilty of any perjury in point of fact, but we fail to perceive in what consists the honesty and reasonableness of defendant’s belief that he was. The fact that the motion for a new trial was filed only a few days after the affidavit was made. — causeless as it was — and that defendant voluntarily abandoned the prosecution a little later on go to confirm our conclusion that the defendant did not have even probable cause for making this affidavit and causing plaintiff’s arrest and incarceration in jail. In such case legal malice is implied, and the plaintiff is entitled to compensation.
III.
As to the quantum of damages we are disinclined to make an extravagant allowance, and as the plaintiff offered no proof of special damages, we think, under the circumstances of this case, that on both grounds of complaint there should be awarded to plaintiff the sum of $300, without interest.
It is therefore ordered and decreed that the judgment appealed from be amended and increased to the sum of $300, and that as thus amended the same be affirmed, and that defendant and appellee pay all costs.